UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division

SANDRA YOUNG,                          )
18822 E. Via De Arboles                )
Queen Creek, AZ 85242,                 )
                                       )
and                                    )
                                       )
JILL ADAMS,                            )
2008 Derry Road                        )       Civil Action No.:_____
York, PA  17408,                       )
                                       )
and                                    )
                                       )
ERIN AHMAY,                            )
2376 Glenmont Circle #208              )
Silver Spring, MD  20902,              )
                                       )
and                                    )
                                       )
AARON BROCK,                           )
1127 Park Street, NE                   )
Washington, DC  20002,                 )
                                       )
and                                    )
                                       )
MARK BRUDNEY,                          )
1123 B Hollywood Road                  )
Linden, NJ  07036,                     )
                                       )
and                                    )
                                       )
JEREMY L. BRUNSON,                     )
4419 Duke Street, #401                 )
Alexandria, VA  22304,                 )
                                       )
and                                    )
                                       )
BENJAMIN JASPER FAIR,                  )
305 Kurtz Avenue                       )
York, PA 17401,                        )
                                       )
and                                    )
                                       )

1

**REBECCA GOLDENBAUM,**
**9304 Shannon Street**
**Manassas Park, VA  20111,**                    )
                                                 )
and                                              )
                                                 )
**GINO GOUBY**                                   )
**4419 Duke Street, #401**                       )
**Alexandria, VA  22304,**                       )
                                                 )
and                                              )
                                                 )
**SHARON HANSEN,**                               )
**1314 Grandin Avenue**                          )
**Rockville, MD  20852,**                        )
                                                 )
and                                              )
                                                 )
**HOPE MANLEY,**                                 )
**437 Vista Drive**                              )
**Gahanna, OH  43230,**                          )
                                                 )
and                                              )
                                                 )
**JONATHAN MYERS**                               )
**12404 Village Square Terrace #302**            )
**Rockville, MD  20852,**                        )
                                                 )
and                                              )
                                                 )
**VERONICA J. NIN,**                             )
**6501 Gentle Ben Circle**                       )
**Wesley Chapel, FL  33544,**                    )
                                                 )
and                                              )
                                                 )
**LESLIE PUZIO,**                                )
**6355 New Haven Court**                         )
**Frederick, MD  21703,**                        )
                                                 )
and                                              )
                                                 )
**LAURA SANDERLIN,**                             )
**4 Stanyon Road**                               )
**York, PA  17403,**                             )
                                                 )
and                                              )

2

ROBERT D. TRAINA, JR.,                )
1108 Trinidad Avenue, NE         )
Washington, D.C.  20002          )
                                                  )
and                                 )
                                                  )
JASON G. WINTERS              )
519 W. Main Street              )
Middletown, MD  21769,          )
                                                  )
*on behalf of themselves and on behalf*   )
*of all other similarly situated,*        )
                                                  )
*Plaintiffs,*             )
                                                  )
v.                                  )
                                                  )
VIABLE COMMUNICATIONS, INC.,   )
5320 Marinelli Road            )
Rockville, MD  20852         )
                                                  )
     Serve Resident Agent:        )
     MICHAEL LASALA         )
     211 E. Lombard St.         )
     Suite #177                )
     Baltimore, MD 21202,       )
                                                  )
and                                 )
                                                  )
JOHN YEH,                 )
9401 Fox Hollow Drive,         )
Potomac, MD  20854,         )
                                                  )
and                                 )
                                                  )
MARY YEH,                )
9401 Fox Hollow Drive,         )
Potomac, MD  20854,         )
                                                  )
and                                 )
                                                  )
JOSEPH YEH,              )
7117 Intrepid Lane,            )
Gaithersburg, MD 20879,       )
                                                  )
*Defendants.*        )

3

### REPRESENTATIVE ACTION AND CLASS ACTION CIVIL COMPLAINT
### FOR EQUITABLE AND MONETARY RELIEF AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs Sandra Young, Jill Adams, Erin Ahmay, Aaron Brock, Mark Brudney, Jeremy L. Brunson, Benjamin Jasper Fair, Rebecca Goldenbaum, Gino Gouby, Sharon Hansen, Hope Manley, Jonathan Myers, Veronica J. Nin, Leslie Puzio, Laura Sanderlin, Robert D. Traina, Jr., and Jason G. Winters, on behalf of themselves and on behalf of all other similarly situated employees, by and through counsel, and file this Class Action and Representative Action Civil Complaint for Equitable and Monetary Relief and Demand for Jury Trial against Defendants Viable Communications, Inc., John Yeh, Mary Yeh and Joseph Yeh.

### Introduction

1.      This is a Civil Class Action and Representative Action brought by the named Plaintiffs Sandra Young, Jill Adams, Erin Ahmay, Aaron Brock, Mark Brudney, Jeremy L. Brunson, Benjamin Jasper Fair, Rebecca Goldenbaum, Gino Gouby, Sharon Hansen, Hope Manley, Jonathan Myers, Veronica J. Nin, Leslie Puzio, Laura Sanderlin, Robert D. Traina, Jr., and Jason G. Winters (collectively, "Plaintiffs"), on behalf of themselves and the other similarly situated employees and/or former employees ("the other similarly situated employees") who may participate as permitted under Federal Rule of Civil Procedure 23 and 29 U.S.C. § 216(b) against Defendants Viable Communications, Inc., a Delaware for-profit corporation, and its owners and officers John Yeh, Mary Yeh and Joseph Yeh.

2.      Plaintiffs assert that Defendants are jointly and severally liable to the Plaintiffs and other similarly situated employees for violations of: the Fair Labor Standards Act of June 25, 1938, Chapter 676, 52 Stat. 1069, 29, U.S.C. §§ 201-19 ("FLSA"); the Maryland Minimum Wage and Hours Law, Md. Code Lab. & Empl. §§ 3-501 et seq. ("MWHL"); the Maryland

Wage Payment and Collection Law §§ 3-401 et seq. ("MWPCL"); and Maryland common law on a basis of *quantum meruit*.

### Jurisdiction and Venue

3.     This Court has subject matter jurisdiction over the claims presented pursuant to the FLSA, a law of the United States regulating interstate commerce, and specifically under the provisions of Section 16 of said Act, as amended (29 U.S.C. § 216(b)).

4.     The Maryland statutory and common law claims set forth herein are so related to and intertwined with the Plaintiffs' claims under the FLSA that they form a part of the same case and controversy.  Therefore, this Court has supplemental jurisdiction over the Maryland state and common law claims presented in the first, second and fourth causes of action pursuant to 28 U.S.C. § 1367(a).

5.     Venue in this district and in this division is appropriate pursuant to 28 U.S.C. §§ 1391(b)(3) and 1391(c), because Defendants conduct business in this judicial district and in this division.

### Parties

6.     Plaintiff Sandra Young is domiciled in the State of Arizona.

7.     Plaintiff Jill Adams is domiciled in the State of Pennsylvania.

8.     Plaintiff Erin Ahmay is domiciled in the State of Maryland and is a resident of Montgomery County.

9.     Plaintiff Aaron Brock is domiciled in the District of Columbia.

10.     Plaintiff Mark Brudney is domiciled in the State of New Jersey.

11.     Plaintiff Jeremy L. Brunson is domiciled in the State of Virginia.

12.     Plaintiff Benjamin Jasper Fair is domiciled in the State of Pennsylvania.

13.    Plaintiff Rebecca Goldenbaum is domiciled in the State of Virginia.

14.    Plaintiff Gino Gouby is domiciled in the State of Virginia.

15.    Plaintiff Sharon Hansen is domiciled in the State of Maryland and is a resident of Montgomery County.

16.    Plaintiff Hope Manley is domiciled in the State of Ohio.

17.    Plaintiff Jonathan Myers is domiciled in the State of Maryland and is a resident of Montgomery County.

18.    Plaintiff Veronica J. Nin is domiciled in the State of Florida.

19.    Plaintiff Leslie Puzio is domiciled in the State of Maryland and is a resident of Frederick County.

20.    Plaintiff Laura Sanderlin is domiciled in the State of Pennsylvania.

21.    Plaintiff Robert D. Traina, Jr., is domiciled in the District of Columbia.

22.    Plaintiff Jason G. Winters is domiciled in the State of Maryland and is a resident of Frederick County.

23.    Defendant Viable Communications, Inc. ("Viable") is a Delaware for-profit corporation that has its principal place of business in the State of Maryland, employs ten (10) or more persons, and is subject to the personal jurisdiction of this Court and the Courts of the State of Maryland.

24.    Defendant John Yeh is domiciled in the State of Maryland and is and was at all times relevant to this action an owner of Viable.

25.    Defendant Mary Yeh is domiciled in the State of Maryland and is and was at all times relevant to this action an officer of Viable.

26.    Defendant Joseph Yeh is domiciled in the State of Maryland and is and was at all times relevant to this action an officer of Viable.

27.     Defendants Viable, John Yeh, Mary Yeh and Joseph Yeh act through unified operation and/or common control so as to constitute an "enterprise" within the meaning of § 203(r) of the FLSA. 29 U.S.C. § 203(r)(1).

28.     In addition to Plaintiffs, Defendants have employed or do employ other similarly situated employees; that is, these persons are or were employed by Defendants as part of their workforce, and are or were Defendants' employees as the term is defined by FLSA and Maryland statutory and common law.

29.     Upon information and belief, there are at least ninety (90) similarly situated other persons who are or were employed by Defendants as part of their workforce during the period from on or about July 1, 2009, to present, and are or were Defendants' employees as that term is defined by FLSA and Maryland statutory and common law.

## Factual Allegations

30.     Defendant Viable Communications is a for-profit business incorporated in the State of Delaware and has gross revenue in excess of $500,000 per annum, is engaged in the production of goods for interstate commerce and/or uses and handles goods which have moved in interstate commerce as such terms are defined in FLSA, employs ten (10) or more persons, and is an employer subject to the jurisdiction of the FLSA, MWHL and MWPCL.

31.     Defendant John Yeh is an owner and officer of Viable Communications and thus is an employer subject to the jurisdiction of the FLSA, MWHL and MWPCL.

32.     Defendant Mary Yeh is an officer of Viable Communications and thus is an employer subject to the jurisdiction of the FLSA, MWHL and MWPCL.

33.     Defendant Joseph Yeh is an officer of Viable Communications and thus is an employer subject to the jurisdiction of the FLSA, MWHL and MWPCL.

34.    Sandra Young has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Sandra Young's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 1.)

35.    Jill Adams has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Jill Adams' Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 2.)

36.    Erin Ahmay has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Erin Ahmay's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 3.)

37.    Aaron Brock has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Aaron Brock's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 4.)

38.    Mark Brudney has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Mark Brudney's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 5.)

39.    Jeremy L. Brunson has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Jeremy L. Brunson's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 6.)

40.    Benjamin Jasper Fair has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Benjamin Jasper Fair's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 7.)

41.    Rebecca Goldenbaum has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff

Rebecca Goldenbaum's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 8.)

42.     Gino Gouby has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Gino Gouby's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 9.)

43.     Sharon Hansen has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Sharon Hansen's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 10.)

44.     Hope Manley has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Hope Manley's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 11.)

45.     Jonathan Myers has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Jonathan Myers' Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 12.)

46.     Veronica J. Nin has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Veronica J. Nin's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 13.)

47.     Leslie Puzio has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Leslie Puzio's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 14.)

48.     Laura Sanderlin has given her consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Laura Sanderlin's Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 15.)

49.     Robert D. Traina, Jr., has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Robert D. Traina, Jr.'s Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 16.)

50.     Jason G. Winters has given his consent in writing to become a party plaintiff in this action on behalf of herself and the other employees similarly situated. (*See* Plaintiff Jason G. Winters' Notice of Opt-In and Consent to Become Party Plaintiff Form, Exhibit 17.)

51.     At all times relevant to this Complaint, Defendants have employed or do employ Plaintiffs and the other similarly situated employees, during which time the other similarly situated employees worked as corporate account managers, sign language interpreters, blind interpreters, technical support specialists, market researchers, administrative assistants, call center managers, customer support representatives, state representatives, and other staff positions.

52.     Defendants willfully and intentionally failed to pay Plaintiffs and the other similarly situated employees wages they earned while employed by Defendants.

53.     Further, Defendants failed to pay Plaintiffs and the other similarly situated employees the required minimum and minimum wages during the period Plaintiffs went without wages.

54.     Defendants also failed to compensate Plaintiffs and the other similarly situated employees for accrued vacation time when Defendants terminated them as part of a reduction in force.

55.     Viable is a Video Relay Services ("VRS") provider. VRS enables the deaf and hearing to have a telecommunications accessibility using video technology via an interpreter. A

deaf person is connected visually to the Video Interpreter ("VI") via web cam or videophone, and the hearing person is connected to the VI through traditional telephone.

56.     VRS is a service provided through the Telecommunications Relay Services ("TRS") Fund, which is managed by the National Exchange Carriers Association ("NECA") with oversight by the Federal Communications Commission ("FCC").

57.     Viable is not currently certified by the FCC as a VRS provider.

58.     Because of this lack of certification, Viable must bill through an existing certified video relay services provider to receive payment from the TRS Fund.

59.     As of June 2009, Viable had established a relationship with CAC Relay Services ("CACVRS") in which Viable would bill CACVRS for relay minutes processed during any given month, and CACVRS would in turn bill NECA for these minutes to receive reimbursement from the TRS Fund.

60.     On June 25, 2009, Viable's offices in Rockville, Maryland, were raided by the Federal Bureau of Investigation in relation to an FBI investigation into Viable's relationship with Innovative Services for the Deaf, a corporation based in Miami Lakes, Florida, whose owners were arrested on charges of conspiracy to defraud the federal government.

61.     On June 25, 2009, the same day of the FBI raid, Viable owner and officer John Yeh e-mailed, through his communications director Glenn Lockhart, a message to all employees informing them that Viable had cooperated with FBI investigators and that Viable would continue to operate with business as usual.

62.     Following the FBI raid and in accordance with John Yeh's email directive of June 25, 2009, Plaintiffs and the other similarly situated employees continued to report to work as usual and to perform all required duties to ensure Viable's continued operations.

63.     However, following the FBI raid on Viable's headquarters, CACVRS began to withhold payment for relay minutes submitted by Viable for June, 2009, and all months thereafter.

64.     CACVRS' withholding of payment created an immediate cash flow problem for Viable. In an email communication sent to all Viable employees on July 9, 2009, Lockhart announced that Viable would begin implementing cost-saving measures that included a two-day furlough for employees working in the company's Frederick, Maryland, call center, and an indefinite furlough for employees working in the company's Ellicott City, MD, and Towson, MD, call centers.

65.     In a July 11, 2009 e-mail to all Viable employees, John Yeh notified employees of the likelihood that Viable would not be able to meet its upcoming payroll obligations, indicating that CACVRS was withholding payment to Viable because of concerns over the FBI's investigation.

66.     In his July 11, 2009 e-mail to employees, John Yeh stressed that "we have every intention of meeting payroll and satisfying our obligations to our contractors, vendors and any other creditors. This will not change in the event we are unable to perform this by payday – we intend to make good on our commitment to every employee at the earliest opportunity."

67.     On July 13, 2009, Lockhart sent an email to all employees confirming that Viable would not be able to meet its payroll obligations, stating "At this time, we do not have the cash flow to meet payroll on Friday. However, that is not final -- we are working on getting financing. If you do not get paid this Friday, it does not necessarily mean you will never see your paycheck. Viable plans to pay you for all the days and hours you put in at work as soon as possible."

68.     On July 16, 2009, Viable did not fulfill its regularly scheduled payroll obligations and failed to pay any compensation to Plaintiffs and the other similarly situated employees.

69.     In an email sent to all Viable employees on July 20, 2009, Lockhart announced that Viable had yet to secure funding to be able to pay its employees the wages they were due. He stated "We have no firm announcement as of yet regarding payment but it remains the number one priority once funding comes through."

70.     On various dates in July and August, Plaintiffs Young, Adams, Fair, Goldenbaum, Gouby, Nin, and Sanderlin were notified that they had been laid off from Viable, effective immediately, as part of a reduction in force, stating that "Despite our best efforts, financial circumstances leave us no choice but to reduce our workforce."

71.     In the letter from Viable informing each Plaintiff named in paragraph 70 above of their respective termination, Plaintiffs were informed that their last day of active employment with Viable was the respective date of the letter's delivery.

72.     In the letter from Viable informing each Plaintiff named in paragraph 70 above of their respective termination, Plaintiffs were informed that "per company policy, your accrued vacation will be paid out in a lump sum with your last regular paycheck."

73.     Following these termination notifications from Viable issued on various dates throughout January and February, Defendants failed to pay the Plaintiffs and other similarly situated employees affected by the reduction in force for the regular wages owed and due to Plaintiffs.

74.     Defendants also failed to pay Plaintiffs and the other similarly situated employees affected by the reduction in force for their accrued, compensable vacation time, in violation of Viable's written policy, its notification of termination notifications issued to each employee, and the MWPCL.

75.     On July 31, 2009, Lockhart sent an email communication to all remaining Viable employees – including the Plaintiffs and the other similarly situated employees not affected by

the reduction in force – that the company would again not be able to meet its payroll obligations for the previous two-week pay cycle, for which payroll was scheduled to be issued on July 31, 2009.

76.   Plaintiffs and the other similarly situated employees continued to report to work as usual from on or about June 25, 2009, the date of the FBI raid on Viable's Rockville, MD, headquarters, throughout the months of July and August, or until the dates of their respective terminations. Plaintiffs and the other similarly situated employees performed all of their work related duties and obligations for Defendants during this timeframe.

77.   Despite the forgoing, Defendants have failed and/or refused to compensate Plaintiffs and the other similarly situated employees for any work performed from on or about July 1, 2009, through the present.

78.   Defendants employed Plaintiffs and the other similarly situated employees and were required under the MWPC to pay each employee not subject to its statutory exceptions at least once in every two weeks or twice in each month.

79.   It is undisputed that Plaintiffs and the other similarly situated employees performed their duties throughout June, July and August 2009, or until their respective dates of termination, and thus under the MWPC, their right to compensation vested at that time.

80.   Plaintiffs and the other similarly situated employees in no way ever waived their rights to receive compensation from Defendants for work they had performed.  To the contrary, Plaintiffs and the other similarly situated employees continued to work throughout the months of June, July and August 2009 despite knowing that Defendants were suffering from financial difficulties.

81.   Defendants were required under the MWPC to pay Plaintiffs and the other similarly situated employees all wages due for work that the employees performed before the

14

termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated.

82.     Because Defendants maintained a written company policy stating that all Viable employees will receive compensation for accrued vacation to be paid in a lump sum in the employee's last regular paycheck issued by Viable, Defendants were also required under the MWPC to pay the Plaintiffs and the other similarly situated employees who were affected by Viable's reduction in force for all accrued leave.

83.     There is no bona fide dispute over the validity of the regular wages and accrued vacation compensation owed and due to Plaintiffs and the other similarly situated plaintiffs by Defendants.

84.     Defendants willfully and intentionally violated the FLSA by failing to pay Plaintiffs and the other similarly situated employees the required minimum wage and overtime for the work each individual worked during the period from on or about July 1, 2009, through the present.

85.     As employers subject to the requirements of the FLSA, Defendants were required to pay their employees at least the minimum wage for any work performed during the period in which they went unpaid.

86.     Additionally, Defendants employed Plaintiffs and the other similarly situated employees and were required under the FLSA to compensate Plaintiffs and the other similarly situated employees at a rate of time-and-a-half for any and all overtime hours worked in excess of forty (40) per calendar week.

87.     Defendants were also required under the MWHL to compensate Plaintiffs and the other similarly situated employees for their work at the minimum wage rate set by the State of

Maryland of $6.15 per hour for the work each individual worked during the period from on or about July 1, 2009, through the present.

88.     Defendants willfully and intentionally violated the MWHL by failing to pay any compensation – not even the minimum wage required by the State of Maryland – to Plaintiffs and the other similarly situated employees for the work each individual worked during the period from on or about July 1, 2009, through the present.

89.     Additionally, Defendants employed Plaintiffs and the other similarly situated employees and were required under the MWHL to compensate Plaintiffs and the other similarly situated employees at a rate of time-and-a-half for any and all overtime hours worked in excess of forty (40) per calendar week.

90.     Plaintiffs and the other similarly situated employees conferred a benefit upon Defendants by working for Defendants.

91.     Defendants had an appreciation and/or knowledge of the benefits being conferred upon them by Plaintiffs and the other similarly situated employees, and Defendants were aware that Plaintiffs and the other similarly situated employees expected to be compensated with wages for their work on Defendants' behalf.

92.     Defendants accepted or retained benefits conferred on them by Plaintiffs and the other similarly situated employees under circumstances that would make it inequitable for Defendants to retain those benefits without compensating Plaintiffs and the other similarly situated employees for the value of their services.

## Maryland Wage & Hour & Wage Payment & Collection Law Class Action Allegations

93.     Plaintiffs and the other similarly situated employees performed all their duties during the period from on or about July 1, 2009, through the present, and thus under the MWPC, their right to compensation vested at that time.

16

94.     Despite Plaintiffs and the other similarly situated employees completing their duties, Defendants failed to pay Plaintiffs and the other similarly situated employees the compensation to which they were and are entitled.

95.     Defendants failed to pay Plaintiffs and the other similarly situated employees even the minimum hourly wage rate set by the State of Maryland for work they performed.

96.     In addition to Plaintiffs, there are numerous other persons employed by Defendants who are similarly situated to Plaintiffs in that such similarly situated persons, like Plaintiffs, performed work for Defendants for which Defendants failed to pay wages.  Upon information and belief, the number of such persons exceeds ninety (90).

97.     The persons similarly situated to Plaintiffs and described in the preceding paragraph constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

98.     There are questions of law and fact common to the putative class which predominate over any questions affecting only individual members, which include, but are not limited to, the following:

> a.  The amount of regular wages due and owing by the Defendants to Plaintiffs and the other similarly situated employees pursuant to MWPCA.
>
> b.  The amount of accrued compensation due and owing by the Defendants to Plaintiffs and the other similarly situated employees pursuant to MWPCA.
>
> c.  Whether Defendants had an appreciation or knowledge of the benefits being conferred by the Plaintiffs and the other similarly situated employees, and whether the Defendants' retention of regular wages and overtime wages due and owing to Plaintiffs and the other similarly situated employees made it

inequitable for Defendants to have received the benefits without paying for their value.

d.  Whether Plaintiffs and the other similarly situated employees are entitled to the declaratory relief prayed for below;

e.  The proper measure of their damages; and

f.  Whether Plaintiffs and the other similarly situated employees are entitled to injunctive relief and the nature of such relief.

99.  The claims of Plaintiffs are typical of the claims of the above described class, in that the interests of the Plaintiffs are co-extensive with the interests of the other members of the putative class, there is a lack of adverse interests between Plaintiffs and the other members of the putative class, and common questions exist.

100.  Plaintiffs will fairly and adequately protect the interests of said class.

101.  A class action is superior to other available methods for the fair and efficient adjudication of the class claims under the Maryland Wage and Hour Law, the Maryland Wage Payment and Collection Law, and in *quantum meruit*.

102.  Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the second, third and fourth causes of action should proceed as class actions in respect to the unpaid regular and overtime wages owed to Plaintiffs and the putative class members.

103.  The exact amounts owed to Plaintiffs and the putative class members is unknown but will be determined and stated after a review of the Defendants' records and/or upon the trial of this matter.

## FLSA Representative Action Allegations

104.   Plaintiffs and the other similarly situated employees were entitled to minimum wage and overtime compensation from Defendants during the period which they went unpaid pursuant to the FLSA.

105.   Despite Plaintiffs and the other similarly situated employees completing all required duties, Defendants failed and/or refused to pay Plaintiffs and the other similarly situated employees the minimum wage and overtime compensation as required by the FLSA.

106.   Plaintiffs bring this representative action on behalf of themselves and all other similarly situated employees.  The cohort of similarly situated employees which Plaintiffs seek to represent is defined as follows:

> **All present and former non-exempt employees of Defendants who are entitled to be compensated with minimum wages and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.*, and who were caused to sustain damages when they were not paid the minimum and overtime wages that were legally due and owing to them from and by Defendants.**

107.   The precise number of similarly situated employees and their addresses are unknown to Plaintiffs but are believed to exceed ninety (90).

108.   The similarly situated employees may be identified from Defendants' records and may be notified of the pendency of this representative action by mail, supplemented, if deemed necessary, by published notice.

109.   There is a well-defined community of interest in the questions of law and fact involved in this case which affect Plaintiffs and the other similarly situated employees. Questions of law and fact in common include, but are not limited to, the following:

a.   The amount of minimum wages and overtime wages due and owing by the Defendants to Plaintiffs and the other similarly situated employees pursuant to FLSA;

b.     Whether Defendants are unjustly enriched by refusing and failing to pay Plaintiffs and the other similarly situated employees all that is legally due and owing to them pursuant to the FLSA;

c.     Whether Plaintiffs and the other similarly situated employees are entitled to the declaratory relief prayed for below;

d.     The proper measure of their damages; and

e.     Whether Plaintiffs and the other similarly situated employees are entitled to injunctive relief and the nature of such relief.

110.   Plaintiffs adequately represent the similarly situated employees because Plaintiffs will fairly and adequately protect their interest.  Plaintiffs' interests do not conflict with the interests of the similarly situated employees whom Plaintiffs seek to represent.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in employment litigation.

111.   The interests of the similarly situated employees will be fairly and adequately protected by Plaintiffs and their counsel, and this action may be maintained as a representative action because Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other similarly situated employees, thereby making appropriate final and injunctive relief or corresponding declaratory relief with respect to the similarly situated employees.

**COUNT I**
**Fair Labor Standards Act of 1938 (FLSA)**
**29 U.S.C. § 201, *et seq.***
**(Failure to Pay Minimum Wages and Overtime)**
**(As to the Named Plaintiffs and All Similarly Situated Hourly Wage Earners)**
**(As Against All Defendants, jointly and severally)**

112.   Plaintiffs hereby incorporate all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

113.   Defendants willfully and/or intentionally failed and/or refused to pay to the Plaintiffs and the other similarly situated employees the minimum wages and overtime wages due and owed under the FLSA for the period from on or about July 1, 2009, through the present.

114.   Defendants' actions were taken with willful disregard for the rights of Plaintiffs and other similarly situated employees under the FLSA.

115.   As a result of Defendants' unlawful conduct, Plaintiffs and the other similarly situated employees suffered a loss of wages.

116.   Plaintiffs and the other similarly situated employees are owed unpaid minimum wages and overtime wages by Defendants as allowed under 29 U.S.C. §§ 206 and 207 in an amount which will be determined upon review of Defendants' records and/or at the trial of this action.

117.   The number of similarly situated employees, and the names of such persons, is unknown, but such persons, upon information and belief, ninety (90) or more, and such persons, who will be identified once discovery is had in this case upon the review of Defendants' records and upon such identification will file written consents to joinder with this Court pursuant to 29 U.S.C. § 216(b), are owed unpaid minimum wages and overtime wages from Defendants pursuant to 29 U.S.C. §§ 206 and 207 in an amount which will be determined upon a review of Defendants' records and/or at the trial of this action.

118.   For violations of the FLSA, 29 U.S.C. § 216(b) allows Plaintiffs and the other similarly situated employees to recover from Defendants, in addition to any judgment awarded, an additional equal amount as liquidated damages as well as interest on the monies due and owing.

119.   29 U.S.C. § 216(b) further provides that Plaintiffs and the other similarly situated employees may receive, without limitation, employment, reinstatement, promotion, the costs of this action, as well as a reasonable attorneys' fee to be paid by Defendants.

120.   Wherefore, Plaintiffs, on behalf of themselves and the other similarly situated employees on this first cause of action, seek judgment against Defendants, together with an award of interest and costs.

**COUNT II**
**Maryland Wage Payment and Collection Act**
**MD Code, Labor and Employment, §3-501, *et seq.***
**(Failure to Pay Wages Earned)**
**(As to the Named Plaintiffs and All Similarly Situated Hourly Wage Earners)**
**(As Against All Defendants, jointly and severally)**

121.   Plaintiffs hereby incorporate all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

122.   Plaintiffs and the other similarly situated employees are or were "employees" and Defendants are "employers" as those terms are defined in the Maryland Wage Payment and Collection Act.

123.   Despite Plaintiffs and the other similarly situated employees completing everything required of them to earn wages during the period from on or about July 1, 2009, through the present, Defendants failed to pay Plaintiffs and the other similarly situated employees the wages they earned.

124.   Because Defendants failed to compensate Plaintiffs and the other similarly situated employees for the full amount of compensation for the hours which they worked on Defendants' behalf during the period from on or about July 1, 2009, through the present, Defendants wrongfully withheld their wages in violation of the Maryland Wage Payment and Collection Law.

125.   As the direct and proximate result of Defendants' willful and intentional violation of Maryland Wage Payment and Collection Law, Plaintiffs and the other similarly situated employees were caused to suffer damages.

126.   In addition to Plaintiffs, there are numerous other persons employed by Defendants who are similarly situated to Plaintiffs in that such similarly situated persons, like Plaintiffs, completed everything required of them to earn wages from the Defendants during the period from on or about July 1, 2009, through the present, and upon information and belief the number of such persons exceeds ninety (90).

127.   The other similarly situated employees described in the preceding paragraph constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

128.   There are questions of law and fact common to the putative class which predominate over any questions affecting only individual members, specifically whether they are entitled to damages as a result of the benefits, *i.e.* their uncompensated labor, conferred upon Defendants by Plaintiffs and the other similarly situated employees, the appreciation or knowledge of the benefits by the Defendants, and the retention of regular wages due and owing to Plaintiffs and the other similarly situated employees by Defendants in circumstances that make it inequitable for Defendants to have received the benefits without paying for their value.

129.   Plaintiffs' claims are typical of the claims of the above described class, in that Plaintiffs' interests are co-extensive with the interests of the other members of the putative class, there is a lack of adverse interests between Plaintiffs and the other members of the putative class, and common questions exist.

130.   Plaintiffs will fairly and adequately protect the interests of said class.

131.   A class action is superior to other available methods for the fair and efficient adjudication of the class claims for breach of contract.

132.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this first cause of action should proceed as a class action in respect to the unpaid regular wages owed to Plaintiffs and the putative class members.

133.   The exact amounts owed to Plaintiffs and the putative class members is unknown but will be determined and stated after a review of the Defendants' records and/or upon the trial of this matter.

134.   Wherefore, Plaintiffs, on behalf of themselves and the within described class of other persons similarly situated on this second cause of action, seek a judgment against Defendants, together with an award of interest and costs.

135.   For violations of the Maryland Wage Payment and Collection Law, § 3-507.1, Plaintiffs and the other similarly situated employees may recover from Defendants, in addition to any judgment awarded, their reasonable attorneys' fees and costs or fees of any nature, as well as treble damages.

136.   Wherefore, Plaintiffs, on behalf of themselves and the described class of similarly situated employees on this second cause of action, seek judgment against Defendants, together with an award of interest and costs.

**COUNT III**
**Maryland Wage and Hour Law**
**MD Code, Labor and Employment, §3-401 *et seq***
**(Failure to Pay Minimum Wage)**
**(As to the Named Plaintiffs and All Similarly Situated Hourly Wage Earners)**
**(As Against All Defendants, jointly and severally)**

137.   Plaintiffs hereby incorporate all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

138.   Plaintiffs and the other similarly situated employees are or were "employees" and Defendants are "employers" as those terms are defined in the Maryland Wage and Hour Law.

139.   Defendants failed to pay Plaintiffs and other similarly situated employees any wages for the work they performed during the period from on or about July 1, 2009, through the present.

140.   Defendants were required under the MWHL to compensate Plaintiffs and other similarly situated employees for their work at the minimum wage set by the State of Maryland of $6.15 per hour during the period they went unpaid during the period from on or about July 1, 2009 through the present.

141.   As the direct and proximate result of Defendants' willful and intentional violation of the Maryland Wage and Hour Law, Plaintiffs and the other similarly situated employees and similarly situated employees were caused to suffer damages.

142.   In addition to Plaintiffs, there are numerous other persons employed by Defendants who are similarly situated to Plaintiffs in that such similarly situated persons, like Plaintiffs, performed work, labor and services for Defendants during the period from on or about July 1, 2009, through the present, for which such persons did not receive any compensation, not even at the minimum wage rate, upon information and belief the number of such persons exceeds ninety (90).

143.   The other similarly situated employees described in the preceding paragraph constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

144.   There are questions of law and fact common to the putative class which predominate over any questions affecting only individual members, specifically whether they are entitled to damages as a result of the benefits, *i.e.* their uncompensated labor, conferred upon Defendants by Plaintiffs and the other similarly situated employees, the appreciation or knowledge of the benefits by the Defendants, and the retention of regular wages due and owing to Plaintiffs and the other similarly situated employees by Defendants in circumstances that make it inequitable for Defendants to have received the benefits without paying for their value.

145.   Plaintiffs' claims are typical of the claims of the above described class, in that Plaintiffs' interests are co-extensive with the interests of the other members of the putative class, there is a lack of adverse interests between Plaintiffs and the other members of the putative class, and common questions exist.

146.   Plaintiffs will fairly and adequately protect the interests of said class.

147.   A class action is superior to other available methods for the fair and efficient adjudication of the class claims for breach of contract.

148.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this second cause of action should proceed as a class action in respect to the unpaid overtime wages owed to Plaintiffs and the putative class members.

149.   The exact amounts owed to Plaintiffs and the putative class members is unknown but will be determined and stated after a review of the Defendants' records and/or upon the trial of this matter.

150. Wherefore, Plaintiffs, on behalf of themselves and the within described class of other persons similarly situated on this third cause of action, seek a judgment against Defendants, together with an award of interest and costs.

151. For violations of the Maryland Wage and Hour Law, § 3-427 allows Plaintiffs and the other similarly situated employees to recover from Defendants the difference between the wages actually paid to them and the required wages owed to them, in addition to any judgment awarded, and their reasonable attorneys' fees as well as their costs or fees of any nature.

152. Wherefore, Plaintiffs, on behalf of themselves and the described class of similarly situated employees on this second cause of action, seek judgment against Defendants, together with an award of interest and costs.

**COUNT IV**
***Quantum Meruit***
**Maryland Common Law**
**(As To the Named Plaintiffs and All Similarly Situated Hourly Wage Earners)**
**(As Against All Defendants, jointly and severally)**

153. Plaintiffs hereby incorporate all allegations set forth in all the foregoing paragraphs as though fully alleged herein.

154. At all times relevant to this complaint, Plaintiffs and the other similarly situated employees were employees of Defendants.

155. Defendants had a contractual obligation to compensate Plaintiffs and the other similarly situated employees with regular and overtime wages for the regular and overtime hours Plaintiffs and the other similarly situated employees worked for Defendants.

156. Plaintiffs and the other similarly situated employees conferred benefits upon Defendants by working regular and overtime hours on Defendants' behalf.

157. Defendants had an appreciation or knowledge of the benefits being conferred upon them by Plaintiffs and the other similarly situated employees.

27

158.   Despite the foregoing, Defendants retained the regular and overtime wages due and owing to Plaintiffs and the other similarly situated employees in circumstances that make it inequitable for Defendants to have received the benefits without paying for their value.

159.   In addition to Plaintiffs, there are numerous other persons employed by Defendants who are similarly situated to Plaintiffs in that such similarly situated persons, like Plaintiffs, performed substantial regular and overtime work, labor and services for Defendants for which such persons did not receive the compensation, and upon information and belief the number of such persons exceeds ninety (90).

160.   The persons similarly situated to Plaintiffs and described in the preceding paragraph constitute a class of persons that is so numerous that joinder of all such persons individually is impractical.

161.   There are questions of law and fact common to the putative class which predominate over any questions affecting only individual members, specifically whether they are entitled to damages in *quantum meruit* as a result of the benefits, *i.e.* their uncompensated regular and overtime labor, conferred upon Defendants by Plaintiffs and all persons similarly situated, the appreciation or knowledge of the benefits by the Defendants, and the retention of regular and overtime wages due and owing to Plaintiffs and all persons similarly situated by Defendants in circumstances that make it inequitable for Defendants to have received the benefits without paying for their value.

162.   Plaintiffs' claims are typical of the claims of the above described class, in that Plaintiffs' interests are co-extensive with the interests of the other members of the putative class, there is a lack of adverse interests between Plaintiffs and the other members of the putative class, and common questions exist.

163.   Plaintiffs will fairly and adequately protect the interests of said class.

164.   A class action is superior to other available methods for the fair and efficient adjudication of the class claims for breach of contract.

165.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, this fourth cause of action should proceed as a class action in respect to the unpaid overtime wages owed to Plaintiffs and the putative class members.

166.   The exact amounts owed to Plaintiffs and the putative class members is unknown but will be determined and stated after a review of the Defendants' records and/or upon the trial of this matter.

167.   Wherefore, Plaintiffs, on behalf of themselves and the described class of similarly situated employees on this fourth cause of action, seek judgment against Defendants in *quantum meruit*, together with an award of interest and costs.

## Prayer for Relief

WHEREFORE, Plaintiffs pray this Honorable Court for the following relief:

A.     An order appointing Plaintiffs and their counsel of record to represent all other similarly situated employees in their FLSA claims;

B.     Certification of the proposed Plaintiffs' Maryland Wage Payment and Collection Law class and designation of Plaintiffs as class representatives and appointment of their counsel as counsel of record for the class;

C.     Certification of the proposed Plaintiffs' Maryland Wage and Hour Law class and designation of Plaintiffs as class representatives and appointment of their counsel as counsel of record for the class;

D.      Certification of the proposed Plaintiffs' *quantum meruit* class and designation of Plaintiffs as class representatives and appointment of their counsel as counsel of record for the class;

E.      A preliminary and permanent injunction against Defendants and their directors, officers, owners, agents, successors, employees and representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, improper activities and practices, policies, customs and usages set forth herein;

F.      An order awarding declaratory relief as requested herein and as the Court deems appropriate;

G.      An order awarding restitution and/or disgorgement of profits;

H.      Judgment against Defendants in the amount of economic damages, compensatory damages, liquidated damages, and punitive damages to be determined at trial;

I.      Pre-judgment interest;

J.      Employment, reinstatement, promotion, frontpay, or other equitable relief;

K.      Interest due on unpaid wages;

L.      Compensatory damages;

M.      A reasonable attorney's fee and the costs of this action; and

N.      Any other relief this Honorable Court deems just and proper to award.

## Demand for Jury Trial

Plaintiffs demand a trial by jury for any and all issues proper to be so tried.

*Sandra Young, Jill Adams, Erin Ahmay, Aaron Brock, Mark Brudney, Jeremy L. Brunson, Benjamin Jasper Fair, Rebecca Goldenbaum, Gino Gouby, Sharon Hansen, Hope Manley, Jonathan Myers, Veronica J. Nin, Leslie Puzio, Laura Sanderlin, Robert D. Traina, Jr., and Jason G. Winters, on behalf of themselves and on behalf of all other similarly situated employees and/or former employees of Defendants,*

R. Scott Oswald, D. Md. Bar No. 25391
Nicholas Woodfield, D. Md. Bar No. 15474
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
nwoodfield@employmentlawgroup.com
*Counsel for Plaintiffs*